IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2006 Session

## DONNA MARIE TAIT v. WILLIAM FRANK TAIT

**Direct Appeal from the Chancery Court for Shelby County**
**No. 03-0362-1     Walter L. Evans, Chancellor**

_____

**No. W2005-00976-COA-R3-CV - Filed May 18, 2006**

_____

Donna Marie Tait ("Wife") filed for divorce from William Frank Tait ("Husband") citing grounds of inappropriate marital conduct. The parties entered into a Permanent Parenting Plan and a Property Settlement Agreement, but reserved the issue of alimony for trial. After hearing the evidence, the trial court found that Wife was not in need of additional alimony support from Husband, despite Husband's ability to pay. Wife appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Mitchell D. Moskovitz, Adam N. Cohen, Memphis, Tennessee, for the Appellant, Donna Marie Tait.

Darrell D. Blanton, Memphis, Tennessee, for the Appellee, William Frank Tait.

**OPINION**

*Factual Background and Procedural History*

Donna Marie Tait ("Wife") and William Frank Tait ("Husband") were married on March 1, 1986. Throughout the marriage, Husband worked as an insurance agent, earning approximately $415,569 to $511,595 per year from 2000 until Husband's subsequent retirement. Wife is a high school graduate who stayed at home during the marriage and cared for the parties' home and children. Wife asserts that later in the marriage, she sought to continue her education, but Husband rejected this notion and insisted that Wife remain a stay-at-home mother.

Wife initially filed for divorce citing the grounds of irreconcilable differences. However, Wife later amended her divorce petition to cite the grounds of inappropriate marital conduct against Husband. Specifically, Wife asserted that Husband was having an extra-marital affair–a

fact that Husband did not deny. As a result, the trial court granted Wife a divorce based upon inappropriate marital conduct by Husband. At trial, the court approved the parties' Settlement Agreement as to Division of Property, whereby Wife received fifty-five percent of the marital estate. Wife's portion of the marital estate totaled approximately $976,793, with $524,888 of the total being in the form of a retirement account. Wife also received $149,083 in cash, which represented half of an investment account the parties had set aside for the children's education and had agreed to not include in the marital estate. Wife further received an income from Husband's pension in the amount of $2,380 per month, which would increase to $5,082 at Husband's retirement. At the time of trial, Husband testified that he planned to retire in 2006, at which time he would earn approximately $10,000 per month in pension benefits.[1]

In presenting evidence on alimony, Wife asserted that her personal expenses totaled $7,344.52 per month.[2] These expenses were apart from those incurred by her children, where were covered by child support payments that Wife would receive from Husband under the parties' Permanent Parenting Plan. Wife further testified that her income consisted of the $2,380 per month gross she would receive from Husband's pension, which would increase to $5,082 per month at Husband's retirement. Wife presented further evidence that she suffers from lupus, which causes her considerable joint pains, eye problems, and numbness in her hands. Wife also testified that she has developed arthritis in her hands, knees, and feet; and suffers from both high blood pressure and high cholesterol.

In addition to Wife's proof, the trial court also heard expert testimony from Gordon Thompson, a certified public accountant, who testified that despite income from child support, pension benefits, and social security, Wife would have an annual deficit for the rest of her life

---

[1] On September 20, 2005, Husband filed a Motion to Consider Post-Judgment Facts which stated:

　　1. At the time of the Trial in this matter, the Appellant (Wife) was receiving a pension benefit of Two Thousand Three Hundred Eighty Dollars ($2,380) per month.

　　2. Subsequent to the Trial, and during the pendency of this appeal, Appellant began receiving pension benefits of Five Thousand Eighty Two Dollars ($5,082) per month.

　　3. It was contemplated by the parties that this increase would take place as evidenced throughout the record.

Husband's motion was granted by this Court on October 11, 2005. It is undisputed that Husband is retired.

[2] In her reply brief, Wife revised her monthly expenses for a new total of $6,952.39.

and would ultimately expend all of her liquid "working capital"[3] by age seventy-five.[4]  However, at that time, Mr. Thompson testified that Wife would have approximately $3,200,000 in her retirement account as well as income of $5,080 per month from Husband's pension.  In addition to Mr. Thompson's testimony, Husband also asserted that Wife's income statement did not include money she could earn from working and also did not include interest income Husband alleges Wife could earn if she were to invest her liquid assets[5] at a 5.5 percent rate of return.

At the conclusion of the proof, the Chancellor made extensive findings, which are as follows:

> Each of these parties have submitted affidavits of income and expenses that have been examined and cross-examined, both of which the Court feels to be somewhat inflated.  The Court has considered the testimony of Mr. Thompson, and the reasonableness to be given to his testimony.
>
> The Court has considered the testimony of both [Wife] and [Husband] and the arguments of their counsel.  In determining whether the granting of an order for alimony or payment of support and maintenance to a party is appropriate, the Court considers, among other things, the requested nature, amount, length of term, and the manner of the proposed payment of alimony.
>
> The Court considers the relative earning capacity of the parties, their respective obligations, their needs, and the financial resources that each one has, including income from all sources, including pension, profit sharing, retirement, or other sources.
>
> The Court also considers the relative education and training of each party, the ability and opportunity of each to secure further education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level.
>
> The Court also considers the duration of the marriage, the age and mental condition of the parties, the physical condition of each party, including any disability or incapacity due to a chronic, debilitating disease which, in this case, it appears as though [Wife] suffers from lupus and arthritis and high blood pressure, like so many

---

[3]According to Mr. Thompson's testimony, Wife had approximately $378,858 in "working capital", which represented Wife's investable assets she received in the division of marital property, not including her $524,888 retirement account or the $149,000 she received for the children's education account.

[4]Mr. Thompson's calculated that Wife had approximately $378,858 in liquid "working capital."  However, at trial the Chancellor noted that the Mr. Thompson' projections did not consider any separate property of the parties in calculating income and expenses.  Furthermore, the record shows that Mr. Thompson's calculations also fail to consider any potential earnings by Wife.

[5]In his brief, Husband asserts that Wife has approximately $524,000 in liquid assets.  Husband obtained this amount by adding the liquid portion of Wife's share of the marital estate (approximately $375,000) with Wife's portion of the children's education fund ($149,000).

others do. [Husband] suffers stress and over-exhaustion and has sought psychological and, I believe, psychiatric treatment to stabilize his situation.

The Court also considers the extent to which it would be undesirable for the disadvantaged party to seek employment outside the home.

The Court also considers whether there are minor children in the home. In this case, I believe one is 16 and one is 17.

The Court considers the separate assets of each party, both real and personal, tangible and intangible, and also, of course, the relative fault of the parties. Alimony would not be appropriate if the party seeking alimony is guilty of inappropriate marital conduct, which does not appear to be the situation in this case. . . .

And, of course, the Court can consider any other relative facts that may exist in the award of alimony. [Wife's counsel] is relying upon Tennessee Code, section 36-5-101 to argue that his client is in need of a transitional alimony, and that [Husband] should pay the same. Certain things are uncontroverted and without dispute that the marital property of the parties has been divided 55 percent to [Wife] and 45 percent to [Husband], and that award has been agreed to without regard to any separately accumulated assets of either party. It also appears that, based upon the agreed-to values and amounts, [Wife] is receiving what amounts to approximately $180,000 more in marital property than is [Husband], and $90,000 more than what she normally would have received if this Court had allocated the property one half to one half.

It appears that [Husband] has been in the insurance business for 11 years before the marriage, and has built up certain good will and that he built during the marriage, but based upon the testimony, it appears as though the accumulation of the substantial assets occurred during the marriage, which was the product, or the fruits of the labor, that he had developed for the 11 years prior thereto.

It also appears that if [Husband] retires in '05 or '06, that [Wife] will be receiving in retirement payments approximately $5,082 dollars [per month], and [Husband] will be receiving approximately $10,000 per month in retirement. The amount that [Wife] will be receiving will be in addition to the $1,000,000 that she received as part of the Marital Dissolution Agreement, and the $10,000 a month that [Husband] will be receiving will be in addition to mostly the real estate, which he retained as a result of the settlement, in addition to the assumption of the debt on that real estate.

After considering all of the factors and the disparity in the division of marital assets between the parties, the Court is of the opinion that [Wife] does not satisfy the requirements of this Court to convince the Court that she is in need of any additional alimony support in order to maintain an appropriate standard of living consistent with that which she enjoyed during the marriage. [Husband] probably could pay some alimony, but the Court cannot find that [Wife] is in need of the receipt of any alimony, considering the amount and the liquidity of the marital property that she received, in addition to the additional retirement that will be forthcoming to her, for

-4-

life, upon [Husband]'s retirement. And for that reason the request for alimony is denied.

Wife appeals.

## *Issues Presented*

Whether the trial court erred in failing to award Wife alimony.

## *Standard of Review*

We review the trial court's findings of fact *de novo*, with a presumption of correctness. Tenn. R. App. P. 13(d) (2005); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court≡s factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court≡s determinations are based on its assessment of witness credibility, appellate courts will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court≡s conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court≡s application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

We review an award of alimony under an abuse of discretion standard. *Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App. 1996). If a discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App.1999).

## *Analysis*

In determining the appropriateness of an award of alimony, courts must consider the statutory factors set out in Tenn. Code Ann. § 36-5-101(d) (Supp. 2004).[6] This section provides:

> (E) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

---

[6]The portion of section 36-5-101 dealing with alimony awards, as amended effective July 1, 2005, is currently codified at Tenn. Code Ann. § 36-5-121 (2005). However, since the trial court decided this case before the current amendment, we review this matter under the version of the statute in effect at the time of the Final Divorce Decree rendered on October 25, 2004.

(i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

(ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(iii) The duration of the marriage;

(iv) The age and mental condition of each party;

(v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(E) (Supp. 2004).

In applying section 36-5-101(d), Tennessee courts consider the most important factors to be the need of the spouse seeking support and the ability of the other spouse to pay. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). Should a court find that a spouse is not "economically disadvantaged" or in need of additional support, then "that spouse is not entitled to support and our inquiry goes no further." *Echols v. Echols*, No. E1999-00619-COA-R3-CV, 2000 WL 688589, at *7 (Tenn. Ct. App. May 30, 2000), *perm. app. denied* (Tenn. Jan. 8, 2001); *see Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (stating that "'the real need of the spouse seeking the support is the single most important factor'" when determining whether to award alimony). In determining what constitutes need, the Tennessee General Assembly states in section 36-5-101(d)(1)(B) and (C) of the Tennessee Code that the need of a disadvantaged spouse, and the ability of such a spouse to be rehabilitated, should be determined in relation to the marital standard of living, whereby "the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during

the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." Tenn. Code Ann. § 36-5-101(d)(1)(B) and (C) (Supp. 2004).[7]

In the case at bar, Wife asserts that the trial court erred when it found that she did not need additional support from Husband to maintain a standard of living analogous to that which she enjoyed during the marriage, despite the fact that Husband had the ability to pay. We disagree. As previously noted in the facts section of this opinion, the trial court in this case considered the many statutory factors set forth under section 36-5-101(d) of the Tennessee Code in determining whether Wife was entitled to an alimony award. Specifically, the trial court considered the duration of the marriage, the age and mental condition of the parties, the extent to which it would be undesirable for the disadvantaged party to seek employment outside the home, the separate assets of each party, the relative fault of the parties, and the division of marital property. Most importantly, however, the court looked at Wife's needs and her financial resources to satisfy those needs. In doing so, the court found that Wife had sufficient funds to maintain a standard of living consistent with what she enjoyed during the marriage, and thus had no need of support from Husband. After a careful review of the record, we find that the facts in this case fail to preponderate against this finding.

The record shows that at trial Wife asserted personal expenses totaling $7,344.52 per month, a figure which, based upon the evidence presented at trial, the court found to be somewhat inflated. In determining whether Wife had sufficient means to pay her expenses, the trial court considered the fact that Wife received nearly $1,000,000 in assets as part of the Marital Dissolution Agreement, $524,888 of which was in the form of a retirement account. The Court further considered the disparity of the division of marital assets, whereby Wife received $180,000 more than Husband, and $90,000 more than what she would have normally received had the trial court allocated the property one half to one half. Besides Wife's share of the marital property, the trial court also considered the fact that Wife would receive $2,380 per month from Husband's pension plan until Husband's retirement, at which time this amount would raise to $5,082 per month.

In addition to hearing evidence concerning Wife's share of the marital estate and husband's pension, the trial court also heard expert testimony from Mr. Thompson, a certified public accountant. Mr. Thompson testified that, based upon Wife's income from child support, pension, and future social security payments, Wife would have to exhaust $378,858 of the liquid assets from her share of the marital estate over a twenty-four to twenty-five year period in order to meet her monthly expenses. However, Mr. Thompson also testified that by the time Wife's liquid assets were exhausted, Wife would be seventy-five years old and have approximately $3,200,000 in her retirement account, along with her pension and social security benefits. Based upon all of these factors, the trial court determined that Wife failed to demonstrate a need for

---

[7]Currently codified at Tenn. Code Ann. § 36-5-121(c)(2) and (d)(2) (2006).

additional support in order to maintain a lifestyle commensurate with the marital standard of living.  We affirm.

Despite the trial court's finding that Wife has no need for alimony support in order to achieve a standard of living analogous to that she enjoyed during the marriage, Wife nonetheless asserts that she is entitled to support because 1) Husband was at fault for breaking up the marriage, 2) Wife should not be required to deplete all of her "capital assets" in order to support her needs, and 3) Wife is incapable of rehabilitation.  Based upon the facts in this case, we find each of these assertions without merit.  In relation to Wife's claim that she is entitled to alimony due to Husband's fault, this Court has recently noted that

> [i]t is well settled that while fault is a factor to be considered, it must not be applied in a punitive manner against a guilty party in determining the award of alimony. [*Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. Ct. App. 1988)]; *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983).  In [*Duncan v. Duncan*, 686 S.W.2d 568 (Tenn. Ct. App. 1984)], this Court specifically rejected the notion of "punitive alimony", [sic] noting that while alimony may be reduced due to a spouse's misconduct, unneeded alimony may not be added to punish a guilty spouse. *Id*. [at 571-72].  We have stated "alimony is not and never has been intended by our legislature to be punitive. (citations omitted).  Nor do we believe it was intended simply as an award of virtue." *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984).

*Wilder v. Wilder*, 66 S.W.3d 892, 895 (Tenn. Ct. App. 2002).  In the case at bar, the trial court found that Wife needed no additional support in order to maintain a lifestyle commensurate with what she enjoyed during the marriage.  As a result, we find that any award of alimony based upon Husband's fault would be purely punitive in nature and thus not allowed under Tennessee law.

We next address Wife's contention that she "should not be required to deplete her assets to support herself after the divorce."  As previously noted, Mr. Thompson testified at trial that Wife would have to expend all of her "liquid working capital" (which Mr. Thompson valued at $378,858)[8] over a twenty-four to twenty-five year period in order to meet her needs.  However, at this time, Mr. Thompson calculated that Wife will be receiving $5,082 in payments from Husband's pension, approximately $1,144 per month in Social Security Benefits, and will have approximately $3,200,000 in her retirement account.  Based upon these figures, we find that Wife will hardly be required to expend an unreasonable amount of her assets in order to provide her own support, and certainly will not jeopardize her future financial security.

Finally, we address Wife's assertion that she is entitled to alimony due to her alleged inability to be rehabilitated.  As set forth in section 36-5-101(d)(1)(C),

---

[8]This total does not include the $149,000 awarded to wife in exchange for her agreement to pay for half of the two minor children's college expenses.

[t]o be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(C) (Supp. 2004). As already discussed in this case, the trial court found that Wife will have sufficient income and assets to maintain a lifestyle comparable to what she enjoyed during the marriage. From the record, it appears that this holding was based solely upon Wife's share of the marital property as well as her income from Husband's pension plan and future Social Security benefits Wife will receive at retirement age. Nowhere in the record does the trial court impute income to Wife which could be earned from Wife's own employment. Furthermore, although Wife testified that she suffered from lupus, arthritis, and various other ailments, no testimony, expert or lay, was presented to prove that Wife was incapable of working and earning income in addition to that she is already receiving. In fact, at the hearing on Wife's Motion to Alter and Amend, Wife's counsel acknowledged that Wife had no disabilities or bodily deficiencies which prohibited her from securing employment if she chose to. Based upon the following facts, we find that rehabilitation is unnecessary in order for Wife to maintain an appropriate standard of living.

### Conclusion

After a careful review of the record in this case, we find that the facts fail to preponderate against the trial court's factual finding that Wife was in no need of additional support from Husband. As a result, we find that the trial court did not abuse its discretion in failing to award Wife alimony and therefore affirm. Costs of this appeal are taxed to Appellant Donna Marie Tait, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE