# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 5, 2009 Session

## ROLAND DAVID SHEPPARD v. WANDA ELIZABETH SHEPPARD

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-D1-07-489     Laurence M. McMillan, Chancellor**

---

**No. M2009-00254-COA-R3-CV - Filed September 27, 2010**

---

The trial court granted the husband a divorce after a marriage of twenty-two years on the ground of the wife's inappropriate marital conduct. The court also divided the marital property and awarded the wife transitional alimony of $150 per month for 24 months. The wife argues on appeal that the trial court should have awarded her alimony *in futuro* of $2,240 per month. The husband argues that it was an error to award the wife any alimony at all. We affirm the award of transitional alimony, but modify it by increasing it to $350 per month.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Carrie W. Gasaway, Clarksville, Tennessee, for the appellant, Wanda Elizabeth Sheppard.

Mark Allen Rassas, Julia Palasek North, Clarksville, Tennessee, for the appellee, Roland David Sheppard.

## OPINION

### I. MARRIAGE AND DIVORCE

Roland D. Sheppard ("Husband") and Wanda E. Sheppard ("Wife") married on May 5, 1987. Their marriage produced one child, a son, born on August 7, 1990.[1] On December

---

[1]He reached his majority during the time of the proceedings herein, so child support is not an issue
(continued...)

1, 2006, Husband left the marital home. He testified that he left because of the improper conduct of Wife, which allegedly included constant hostility, arguments, physical confrontations and the throwing of dishes. About two months later, the parties' child also left the marital residence and moved in with Husband. After he left, Husband continued to pay the first and second mortgages on the marital home, as well as Wife's health insurance, automobile insurance, and credit card payments.[2]

On July 6, 2007, Husband filed a complaint for divorce in the Chancery Court of Montgomery County. The grounds alleged were irreconcilable differences and inappropriate marital conduct. Wife filed an answer and counterclaim for divorce. She admitted that there were irreconcilable differences between the parties, but she denied any inappropriate marital conduct on her part and alleged that Husband himself was guilty of inappropriate marital conduct. Wife asked the court to award her pendente lite spousal support, to name her as the primary residential parent of the parties' then seventeen year old child, and to award her pendente lite child support. Contemporaneously with her answer, Wife filed a motion for a more definite statement.

On December 26, 2007, Husband filed a motion to amend his complaint to allege that Wife had been guilty of adultery. Husband's motion to amend was granted through an agreed order. Husband's counsel subsequently took the deposition of the man Wife was alleged to have had an affair with. Wife allegedly admitted to an affair in her response to interrogatories. During her testimony at trial she admitted to one affair, but denied having sexual relations with the man whom Husband deposed.[3]

On January 11, 2008, Husband filed an income and expense statement with the court. The statement reported gross monthly income of $5,450 from Husband's job as a technician at Bosch Corporation, a manufacturer of automobile parts. His net take home pay was reported as $3,867.42, with monthly expenses of $4,041.66 (which included $350 rent for his current residence and $1,305 for mortgage payments on the marital residence). For her part, Wife's income and expense statement listed gross income of $1,941 a month from her

---

[1](...continued)
in this appeal.

[2]The record shows that Husband initially gave Wife the money for the mortgage and other household obligations. He subsequently learned that she had missed several months of mortgage payments, and he notified Wife through her counsel that he would no longer give her any money, but would pay the mortgage, credit card, and insurance premiums directly.

[3]Neither the deposition of Wife's alleged paramour nor her interrogatory responses are found in the technical record.

part-time position managing the distribution of the Army Times newspaper in the Clarksville/Fort Campbell area, with net income of $1,099.84 a month.

After the failure of court-ordered mediation, the court conducted the divorce hearing on June 4, 2008. The parties' counsel announced at the outset that the parties had agreed to divide the marital property equally and that the primary issue for the court's decision would be alimony. Aside from Husband and Wife, the only witnesses to testify were Hilda Davis, who helps Wife with the delivery of Army Times, and Judy Armstrong, the owner of a catering business for which Wife worked part-time in 2005. Both Ms. Davis and Ms. Armstrong are members of the church that Husband and Wife attend.

During questioning of Husband, his counsel started asking him about Wife's alleged adultery. The trial court cut the questioning short, stating "I've got the gist of the fault part, let's get into the financials." Husband was questioned about a new income and expense statement that he had filed on the day of trial, which recited a gross monthly income of $3,463.20, much less than was reflected in his statement of January 11, 2008. On the stand, he was asked about his most recent paychecks:

Q. . . . now you actually get paid by the week so you have to kind of accumulate this out through the month; is that right?

A. That's correct.

Q. But with the taxes, insurance – actually your paycheck shows less than $2556.70 per month; is that correct?

A. That is correct.

Husband also testified that his earlier income and expense statement was based on his 2006 earnings, which included a great deal of overtime and that Bosch was cutting back as the economy declined.

Wife testified extensively about her medical conditions. She testified that she suffers from a degenerative back condition for which she underwent a spinal fusion, as well as a bladder problem which also required surgery. She testified that she rides along with Hilda Davis during the weekly distribution of the Army Times, but that she is unable to do any of the required lifting, so Ms. Davis actually does most of the work. She further testified that her gross income had dropped to about $1,300 per month because the deployment of troops from Fort Campbell had reduced the circulation of the Army Times and because she paid Ms. Davis $75 per week for her work. However, Ms. Davis testified that Wife had stopped

paying her after Christmas of 2007 because "she can't afford it."

Wife stated that she would eventually have to give up her contract with the Army Times and turn it over to Ms. Davis. Because she was aware that she would need to find another line of work, Wife began a two-year program in the computer field at Miller-Motte Technical College in 2006. She received an Associates Degree in Network Administration in 2008 and has applied for several positions in that field. She testified, however, that her medical limitations closed many potential doors of employment to her and that she did not believe she would be able to pay all her expenses, even with a job. She accordingly asked the court to award her $2,000 per month in alimony.

At the conclusion of proof and of closing arguments, the trial court announced its decision from the bench. The court awarded Husband an absolute divorce on the ground of inappropriate marital conduct. Since neither party wanted to keep the marital home and be responsible for its upkeep, the court ordered it sold, with the proceeds used to pay off the first and second mortgage and the bank credit card debt of about $5,000, with the remaining proceedings to be divided equally between the parties.[4] The court also ordered that Husband's 401(k) with a balance of about $20,000, and his IRA with a balance of about $55,000, be equally divided between the parties through Qualified Domestic Relations Orders.

The court then turned to the question of alimony:

The Court finds taking into account the statutory factors obtained in Tenn. Code Ann. § 36-5-121 an award of long-term alimony is not appropriate for reasons of the fault [for] the break up of the marriage. The fact that the last 17 months Mr. Sheppard has been paying approximately $1,600 a month and expenses. Has borne the cost of his son and some of the most expensive times of that child going through graduation, proms, automobiles, automobile insurance. Mrs. Sheppard does have a degree and although she has a need, Mr. Sheppard has not been demonstrated to me that he has the ability to pay.

The court's decision was memorialized in a Final Decree of Divorce, which was entered July 9, 2008.

---

[4]The court ordered that the marital home be sold at an auction conducted by a Special Master. Husband had testified that the appraisal value of the house was $182,000, which would leave net equity of about $70,000 to be equally divided between the parties. However, the home actually sold for only $132,000, leaving each party with only $5,556.22 in net equity.

## II. POST-TRIAL PROCEEDINGS

On August 7, 2008, Wife filed a motion for new trial or for an amendment of the judgment on the matter of alimony only. After a hearing, the motion was denied. Wife then retained new counsel, who filed a Rule 60.02 motion for relief from the final judgment of the court on August 29, 2008. Once again, the relief requested was a new trial on the issue of alimony only, or an award of alimony "in accordance with her need and the plaintiff's ability to pay, based upon his 2007 income."

Wife alleged that Husband had perpetrated a fraud upon the court by testifying falsely about his income. In support of her motion, she attached a copy of Husband's W-2 form for 2007, which showed gross earnings of $62,745. She pointed out that such an annual income amounts to $5,228.75 per month, quite a bit more than the $3,463.20 per month that Husband had testified to and set out in his most recent income and expense statement.[5] In an order dated October 3, 2008, the trial court granted Wife's Rule 60.02 motion, declaring that it would reopen the proof on the issue of alimony and "conduct an evidentiary hearing regarding the allegation that the Plaintiff was less than candid with the court regarding his income."

The hearing was conducted on November 12, 2008. Husband's weekly pay statements for the weeks between May 4, 2008 and June 22, 2008, were entered into the record. Each statement set out his regular hours, his overtime hours, his hourly rate of pay, his gross pay, his deductions of all types, his net pay for each week in question, and the cumulative yearly total for each category. They clearly indicate that Husband continued to work a substantial amount of overtime each week, and that he was actually earning more in 2008 than he had earned in 2007 and 2006.[6]

At the conclusion of the proof, the court again announced its decision in a very brief statement from the bench.

---

[5]Husband's pay statements reflect a regular rate of pay of $19.80 per hour. Overtime is paid at the rate of time-and-a-half, or $29.97 per hour. If husband were to work forty hours per week with no overtime, his gross annual income would be $41,184 per year, or $3,432 per month. Extrapolating his actual income, including overtime, from January 1, 2008 to June 22, 2008, would result in gross annual income of $72,282 of about $6,023 per month.

[6]The final pay statement, which was for the pay period ending June 22, 2008, indicated total gross income up to that date of $34,751.24.

All right. Based on the – based on the proof presented today, the court will grant the 60.02 motion and modify the alimony award. Mrs. Sheppard will be awarded transitional alimony in the amount of $150 per month for 24 months, retroactive to July 2008 which is the month of the decree.

The trial court's decision was memorialized in a final order dated January 8, 2009. This appeal followed.

### III. ANALYSIS

### A. The Rule 60 Motion

Rule 60 of the Tennessee Rules of Civil Procedure allows the trial court to relieve a party from a final judgment "upon such terms as are just" for a limited number of reasons. These include "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Tenn. R. Civ. P. 60.02(2). A motion for relief under Rule 60 addresses itself to the sound discretion of the trial court, and the scope of review on appeal is whether the trial court abused that discretion. *Toney v. Mueller*, 810 S.W.2d 145, 147 (Tenn. 1991); *Day v. Day,* 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996).

Husband argues that there was no fraud or misrepresentation in this case, and thus that the court's alimony award should be vacated, and the Final Decree of Divorce with its specific denial of alimony be fully reinstated. He asserts that he furnished Wife's attorney with a copy of his 2007 income tax return prior to the hearing of June 4, 2008, and that he testified truthfully during that hearing when he was asked about the net income that was reflected on recent pay stubs.

Wife's attorney questioned Husband to determine if he had deliberately refused to work overtime during the weeks leading up to the final divorce hearing of June 4, 2008, in order to be able to testify to a lower net income and thus to reduce his potential alimony obligation. Husband denied any such action or intention.

Even if Husband's actions did not amount to intentional misrepresentation, however, Rule 60 also authorizes the trial court to relieve a party from a final judgment by reason of "mistake, inadvertence, surprise or excusable neglect." Tenn. R. Civ. P. 60.02(1). In the present case, the trial court initially found that Wife had a need for alimony, but that Husband did not have the ability to pay. Wife raised allegations and submitted proof with her Rule 60 Motion sufficient to suggest that Husband's statements of his income were mistaken, and that Husband did indeed have the ability to pay alimony. Thus, the trial court did not abuse its

discretion in granting Wife's Rule 60 Motion and in awarding alimony to her.

### B. The Type of Alimony Awarded

Wife argues that the award of $150 per month of alimony for 24 months was inadequate, not even amounting to enough to pay her attorney and that, as a disadvantaged spouse in a marriage of long duration, the trial court should have awarded her a much larger monthly allowance, in the form of alimony *in futuro*.

Wife relies heavily on this court's opinion in the case of *Cunningham v. Cunningham*, No. M2002-01659-COA-R3-CV, 2003 WL 22994291 (Tenn. Ct. App. Dec. 22, 2003) (no Tenn. R. App. P. 11 application filed). She has included a lengthy excerpt from that opinion in her brief on appeal. The wife in that case began to suffer back and neck problems in the first year of the parties' marriage, and those problems rendered her unable to work. The trial court more or less equally divided the marital estate, which had a net value of about $284,000, but declined to award the wife any alimony at all, reasoning that because of its division of marital property she was no longer economically disadvantaged relative to the husband.

This court disagreed, noting that the wife's sole income was her monthly disability check of $584, while the husband retained the ability to earn about $65,000 a year from his job at Lowe's. Further, the wife received very little in the way of liquid assets from the property division. Because theirs was a marriage of short duration (seven years) and wife contributed little or nothing to the marital estate, we held that she was not entitled to receive lifetime support in the form of alimony *in futuro*. We did, however, order the husband to pay the wife $24,000 as alimony *in solido*, in sixty monthly installments.

In this case, Wife argues that our reasoning in *Cunningham* indicates that because of the twenty-two year duration of her marriage, the trial court should have awarded her alimony *in futuro*. We disagree. As Husband points out, it was undisputed that the wife in *Cunningham* was 100% disabled and could not even engage in the normal activities of daily living, while Wife in this case has been managing to earn a monthly income despite the medical problems she testified to, and she has made herself qualified for a job in the computer field.[7]

---

[7]Another distinction between *Cunningham* and the present case is that in *Cunningham* the trial court granted the divorce to the wife because of the greater fault of the husband for the collapse of the marriage, while in the present case the trial court granted the divorce to Husband because it found Wife's fault to be greater.

The proof shows that Wife has been earning about $24,000 a year from her job with the Army Times, which requires no more than about twelve hours of work per week. Wife has testified that she can no longer do the physical work that the job requires and that she will eventually have to turn it over to Ms. Davis, who has been doing the work in her place for little or no compensation.

In anticipation of this change, Wife went back to school and earned a degree in Network Administration. She proved to be an excellent student, and despite her medical problems, she should be able to find gainful employment. The only evidence in the record as to Wife's potential earnings is her own testimony that she was applying for an internship that pays about $18,000 a year to start. Wife also testified that she has to pass her A plus certification for hardware and software before she can qualify as a customer service representative for Dell, a job that presumably pays more than an internship. She did not testify, however, that she had been guaranteed any such job, even if she passes the necessary certification.

Our legislature has expressed a preference for rehabilitative, temporary alimony awards over permanent alimony whenever such temporary alimony is feasible. T.C.A. § 36-5-121(d)(2).

> The statute reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

*Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042, at *4 (Tenn. Ct. App. April 27, 2006) (Rule 11 permission to appeal denied Oct. 16, 2006) (citing *Self v. Self,* 861 S.W.2d 360, 361 (Tenn. 1993)).

The support provided by rehabilitative alimony is intended to help the disadvantaged spouse become self-sufficient by allowing him or her to acquire additional job skills, education or training. *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Loria v. Loria,* 952 S.W.2d 836, 838 (Tenn. Ct. App.1997). When rehabilitation is not feasible, the court may then grant long-term alimony awards or *alimony in futuro. Kinard v. Kinard*, 986 S.W.2d at 234; *Young v. Young*, 971 S.W.2d 386, 390-91 (Tenn. Ct. App. 1997); *Storey v. Storey,* 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992).

In the present case, Wife has acquired the skills needed to become self-sufficient and thus does not require rehabilitation. But because she has not yet made the full transition to self-sufficiency, the trial court correctly found that she was entitled to transitional alimony, another form of temporary support which is awarded "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded." Tenn. Code Ann. § 36-5-121(g)(1).

Wife was still earning a modest income at the time of the final hearing in this case, but had not yet made the transition to employment in the field she had trained for. Her income and expense statement recited $725 per month in medical expenses, which together with other household expenses greatly exceeded her monthly income. She also testified to $25,000 in student loans which will have to be repaid. Thus, she clearly needed temporary financial assistance to adjust to the economic consequences of this divorce.

## C. The Amount of the Alimony Award

The amount of alimony to award is within the discretion of the trial court in view of the particular circumstances of each case. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Houghland v. Houghland,* 844 S.W.2d 619, 621 (Tenn. Ct. App. 1992). However, our legislature has set out a list of factors that our courts are directed to consider when making alimony determinations. These include,

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in §

36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties

Tenn. Code Ann. § 36-5-121(i).

Our courts have also stated that the need of the disadvantaged spouse is the single most important factor to consider, followed by the ability of the obligor spouse to pay. *Houghland v. Houghland,* 844 S.W.2d at 621; *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989); *Lancaster v. Lancaster*, 671 S.W.2d 501, 504 (Tenn. Ct. App. 1984). As we pointed out earlier, Wife argues that the amount of alimony awarded to her is not adequate to meet her needs.

The trial court in this case did not state any of its reasons for setting the level of alimony at $150 per month for two years, nor did it refer to the factors set out in Tenn. Code Ann. § 36-5-121(i) or specifically address the magnitude of Wife's need. We must therefore examine the record for clues to its reasoning. We note that in its ruling from the bench at the hearing of June 4, 2008, the court stated two reasons for its refusal to grant Wife any alimony at all, aside from its finding that although Wife had a need, Husband did not have the ability to pay. These were because of Wife's fault, and because during the parties' seventeen month separation, Husband paid the mortgage and other bills, and bore the cost of support for the parties' teenage son. It is fair to infer that these same reasons were behind the trial court's decision on November 12, 2008 to set such a minimal level of support for Wife.

It is true that the relative fault of the parties is one of the factors the trial court is allowed to consider in determining the type and amount of alimony to award. Tenn. Code Ann. § 36-5-121(i)(11). It is well settled, however, that while fault is a factor to be considered in determining an award of alimony, the court must not apply it in a punitive manner against a guilty party. *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Tait v. Tait*, 207 S.W.3d 270, 278 (Tenn. Ct. App. 2006); *Kinard v. Kinard*, 986 S.W.2d at 234. Further, although the evidence does not preponderate against the trial court's finding that Wife is more at fault for the failure of their marriage than Husband, the evidence shows that Husband's fault contributed to that failure as well.

-10-

Husband's payment of the mortgage and other obligations during the parties' separation was also a legitimate factor for the court to consider, amounting as it did to a contribution to the marriage over and above Husband's other contributions prior to the separation. *See* Tenn. Code Ann. § 36-5-121(i)(10). Of course, Husband's payment of the mortgage and other joint obligations during separation inured to his benefit as well as to Wife's. Additionally, other factors that the court did not address suggest that a somewhat greater alimony award would have been appropriate. These factors include the relative earning capacity of the parties, the twenty-two year duration of the marriage, Wife's physical condition, which has resulted in greater medical expenses for her and thus greater need, and the disappointing results of the sale of the marital residence, which has left both parties with much less in the way of liquid assets from the division of marital assets.

In light of these factors, it is apparent that $150 a month will not do very much to address Wife's needs. Further, with his greater earning capacity and current income of over $5,500 per month, Husband clearly has the ability to give her much more support than the court ordered. Thus, we believe that the court erred in not considering those factors and in limiting alimony as it did. We are mindful, however, that Husband depends upon a great deal of overtime work to achieve his current level of income. Thus, although we believe Wife should receive more alimony than was ordered, we do not believe the award should be so large as to compel Husband to work an inordinate number of hours in order to pay it.

Under most circumstances, we would remand a case like this to the trial court for a further hearing on the most appropriate level of alimony to award. But in the interest of judicial economy, including avoiding the cost to the parties arising from an additional hearing, we increase the award to $350 per month, effective immediately. Payments will continue at that rate until the total amount of alimony paid by Husband, including his prior payments, is equivalent to $350 per month for 24 months, or $8,400.

**D. Other Issues**

Wife argues that the trial court should have ordered Husband to pay for her health insurance premiums in the amount of $283 per month, equal to the cost of COBRA coverage through Husband's employer-provided health insurance program, and that such payments should continue for the rest of her life as a form of alimony *in futuro*, even after her COBRA eligibility expires. Wife directs our attention to the case of *Guiliano v. Guiliano*, No. W2007-02752-COA-R3-CV, 2008 WL 4614107 (Tenn. Ct. App. Oct. 15, 2008) (no Tenn. R. App. P. 11 application filed). In that case, this court granted the wife just such relief, relying on Tenn. Code Ann. § 36-5-121(j), which declares that "[t]he court may direct a party to pay the premiums for insurance insuring the health care costs of the other party, in whole or in part, for such duration as the court deems appropriate."

We noted in *Guiliano* that an order to pay health insurance premiums is regarded as a form of alimony and is subject to the considerations set out in Tenn. Code Ann. § 36-5-121(i). However, the facts of that case are very different than those in the one before us. Ms. Guiliano suffered from chronic leukemia. Ms. Guiliano had not worked outside the home after the birth of her first child, whereas Wife herein worked and earned income up to and including the time of her divorce. The trial court found that Mr. Guiliano had an earning capacity of about $175,000 a year, so he could easily afford to pay for Ms. Guiliano's health insurance, whereas in this case Husband's means are far more modest. Finally, Mr. Guiliano did not deny that he had been guilty of adultery, so the allocation of fault was different in the *Guiliano* case than in the one before us.

In light of the circumstances of the present case, we hold that the trial court acted within its discretion in declining to order Husband to pay Wife's health insurance premiums. For similar reasons, we also reject Wife's argument that the trial court should have ordered Husband to obtain life insurance to secure his alimony obligation. Wife again relies on *Guiliano*, where this court ordered the purchase of such insurance. But Ms. Guiliano was awarded a substantial amount of alimony *in futuro*, and the possible duration of such an award justified the purchase of insurance in that case. There is less reason to order the purchase of life insurance to protect an award of transitional alimony.[8] Further, the limited resources of Husband makes a life insurance policy an additional burden which he should not be required to carry.

Wife also argues that the trial court should have awarded her the attorney fees she incurred during the divorce proceedings. Wife reasons that the trial court's division of marital property (including the greatly reduced net proceeds from the sale of the marital home) have left her with very little in the way of liquid assets to pay her legal expenses. She further notes that if she liquidates her share of the retirement accounts for that purpose, she will suffer harsh financial penalties.

Attorney fees in divorce proceedings may be awarded in the form of alimony *in solido*. In determining whether to award attorney fees, the trial court should again consider the factors set out in Tenn. Code Ann. § 36-5-121(i), including the relative fault of the parties. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Lindsey v. Lindsey*, 976 S.W.2d 175, 181 (Tenn. Ct. App. 1997). Fault seems especially relevant in cases where the cause of the divorce, and thus the need for the attorney fees, arises from the conduct of one of the parties. Additionally, our courts have found an award of attorney fees to be most appropriate where the disadvantaged spouse does not have enough in the way of liquid assets

---

[8]Perhaps Wife was anticipating that we would agree to order alimony *in futuro* for her as well. But of course, we decided that only transitional alimony was warranted in this case.

to pay his or her own attorney fees and the obligor spouse is able to pay. *Yount v. Yount*, 91 S.W.3d at 783; *Manis v. Manis*, 49 S.W.3d 295, 307 (Tenn. Ct. App. 2001); *Lindsey v. Lindsey*, 976 S.W.2d at 181.

Every item of marital property in this case was divided equally between Wife and Husband. Thus, although Husband has his own attorney fees to pay, he did not acquire any greater amount of liquid assets from the property division than did Wife. Also, there was no proof in the record as to any bank accounts or other financial assets that Husband held as his separate property. The decision of whether or not to award attorney fees is within the sound discretion of the trial court, and the court's decision will not be disturbed upon appeal unless that discretion has been abused. *Yount v. Yount*, 91 S.W.3d at 783; *Garfinkel v. Garfinkel,* 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). The trial court did not abuse its discretion in this case by declining to award Wife her attorney fees.

## IV. CONCLUSION

The order of the trial court is modified to increase Husband's alimony obligation to $350 per month. In all other respects, the order of the trial court is affirmed. We remand this case to the Chancery Court of Montgomery County for any further proceedings necessary. Divide the costs on appeal equally between the appellant and the appellee.

_____
PATRICIA J. COTTRELL, JUDGE