# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 13, 2012 Session

## DIANNA A. GADDES v. PAUL W. GADDES, JR.

**Direct Appeal from the Chancery Court for Williamson County**
**No. 26842      Donald P. Harris, Chancellor**

---

**No. M2011-02656-COA-R3-CV - Filed February 1, 2013**

---

Mother petitioned for criminal contempt against Father due to his alleged failure to pay child support as required and she further sought reimbursement for one-half of the children's optical and dental expenses. Father counter-petitioned for contempt against Mother. The trial court found Father in criminal contempt, but it declined to impose incarceration. However, the trial court denied Mother's request for optical and dental reimbursement, finding Father was under no obligation to pay such. We affirm in part and we reverse in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Wm. Kenneth Burger, Murfreesboro, Tennessee, for the appellant, Dianna A. Gaddes

Karla C. Hewitt, Nashville, Tennessee, for the appellee, Paul W. Gaddes, Jr.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Dianna A. Gaddes ("Mother") and Paul W. Gaddes, Jr. ("Father") divorced in January 2001.  The parties have two sons, ages seventeen and twelve at the time of the August 2011 hearing in this matter.  Pursuant to the 2001 Final Decree of Divorce, Mother was named the children's custodian from September through May, and Father was ordered to pay $1,622.00 in child support during these months.[1]  Father was named the children's custodian from June through August, and Mother was ordered to pay $290.00 in child support during these months.  However, according to Mother, the parties later verbally agreed that Mother's support obligation would be subtracted from Father's, thus, requiring Father to pay $1,174.00[2] per month, over twelve months.

On December 7, 2010, Mother filed a "Petition for Criminal Contempt" against Father claiming that he owed $2,059.00 in child support, and that he had not yet paid his $1,622.00 December 2010 child support payment.[3]  Mother's petition alleged that since the parties' divorce, Father had paid child support "sporadically, irregularly, and in an untimely manner" and that she had been forced to file multiple contempt petitions against him based upon his failure to pay child support, his failure to pay alimony, and his "engaging in abusive and harassing conduct toward" Mother.  As a sanction for his alleged criminal contempt, Mother sought to have Father incarcerated for ten days.  Additionally, Mother sought to restrict Father's visitation with the children pending mandatory counseling, as well as a judgment for one-half of the children's "medical/dental bills[.]"[4]

---

[1]The Final Decree failed to require either party to pay support from September to December, but Mother claims that this was a clerical error.  On appeal, Father does not dispute that he owed support during these months.

[2]By our calculation, the monthly amount owed by Father would be $1,144.00.  However, we will use the $1,174.00 figure agreed to by the parties.

[3]The Petition for Contempt states "[Father] is presently in arrears in the amount of $2,059.00.  The December payment has not yet been paid."  In her deposition, Mother seemed to state that the $2,059.00 amount included the missed December payment.

[4]Mother's petition stated that it sought reimbursement for "one-half of the unpaid medical/dental bills which are attached."  However, only a $3,145.40 dental bill was attached.  At trial, though, Mother also sought to recover one-half of both a $234.00 optical bill and a $2,400.00 dental bill.  In total, Mother sought a judgment of $2,889.70 for optical and dental expenses (one half of 3 bills: $3,145.00, $234.00, and $2,400.00).

In response, Father filed a "Counter Petition to Modify Final Decree and for Criminal Contempt" seeking a reduction in his child support obligation due to his alleged decreased income and seeking to hold Mother in criminal contempt due to her alleged interference with his parenting time.

A hearing was held on the parties' competing motions on August 23, 2011. Thereafter, the trial court entered an Order finding Father guilty of criminal contempt due to his failure to pay his December 2010 child support obligation on or before December 1, 2010. However, the trial court declined to order Father's incarceration because it found that Father "had made effort [sic] to pay his child support, and he also paid the December, 2010 [sic] child support prior to having been served with the instant Petition for Criminal Contempt which was filed on December 7, 2010 and served upon [Father] later in the month." The court further awarded Mother a $7,583.10[5] judgment against Father for past due child support owed through May 31, 2011, to be paid at the rate of $500.00 per month. However, it declined to award Mother a judgment for the children's dental and optical expenses, finding that Father was not obligated to pay such. In its Order, the trial court, among other things, reduced Father's child support obligation to $789.00 per month,[6] due and payable on the first day of each month, and it awarded Mother her attorney fees of $1,200.00.[7] Mother timely appealed to this Court.

## II. ISSUES PRESENTED

Appellant Mother presents the following issues for review:

1.      Was the trial court correct in its decision to decline the imposition of sanctions for Mr. Gaddes' willful contempt, in view of the record of prior contempt findings in this case; and

2.      Was the trial court correct in its failure to assess a judgment against Mr. Gaddes for one-half (½) of the unpaid medical expenses for the parties' minor children?

---

[5]It is unclear how this amount was calculated.

[6]The trial court imputed a $7,250.00 per month income to Father finding that he "is still voluntarily underemployed[.]"

[7]The Order states that it "is a final order as to the financial issues between the parties, there being no just reason for delay of entry of a final order as to those issues, but [that] all other claims for relief in the parties' Petition and Counter Petition are specifically reserved, the parties having previously been ordered to attend mediation before setting those issues for hearing." Thus, we find that the Order is final and appealable under Tennessee Rule of Civil Procedure 54.02.

For the following reasons, we affirm in part and we reverse in part.

### III. DISCUSSION

#### *A. Criminal Contempt Sanctions*

Tennessee Code Annotated section 29-9-102(3) authorizes a court to exercise its contempt powers for, among other things, the "willful disobedience" of a court order. To find a party's failure to pay child support contemptuous, "the court first must determine that [the obligor] had the ability to pay at the time the support was due and then determine that the failure to pay was wilful." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000).

Contempt may be either criminal or civil in nature. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 613 (Tenn. Ct. App. 2006). Criminal contempt is designed to "'preserve the power and vindicate the dignity and authority of the law'" and to "preserve the court 'as an organ of society.'" *Id.* (quoting *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)). "Generally, sanctions for criminal contempt are designed to punish the contemnor and are unconditional in nature." *Id.* (citing *Black*, 938 S.W.2d at 398); *see also Ahern*, 15 S.W.3d at 79 ("A party who is in criminal contempt cannot be freed by eventual compliance.") (citing *Shiflet v. State*, 400 S.W.2d 542, 543 (Tenn. 1966)). "'[Criminal contempt] is a punitive proceeding intended to impose a fixed punishment for past actions.'" *State ex rel. Farris v. Bryant*, No. E2008-02597-COA-R3, 2011 WL 676162, at *5 (Tenn. Ct. App. Feb. 24, 2011) (quoting *McLean v. McLean*, No. E2008-02796-COA-R3-CV, 2010 210752, at *3 (Tenn. Ct. App. May 28, 2010)).

In this case, Mother argues that the trial court, after finding Father in criminal contempt, erred in failing to order "some period of incarceration[.]" Father does not challenge the underlying finding of criminal contempt; instead, he argues only that the trial court did not err in failing to impose incarceration. We review the "trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review." *Moody v. Hutchison*, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004) (quoting *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 WL 343799, at *8 (Tenn. Ct. App. Feb. 23, 2004)). Under this standard, we will uphold the trial court's determination, irrespective of our inclination to decide the issue differently, so long as the trial court's decision is within the range of acceptable alternatives. *See Tait v. Tait*, 207 S.W.3d 270, 275 (Tenn. Ct. App. 2006) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)).

In her appellate brief, Mother claims that Father has repeatedly disregarded the court's orders for a decade, and therefore, she argues that incarceration–up to ten days–is necessary

to vindicate the sanctity of the court's orders. In support of this argument, Mother cites her own testimony at the August 2011 hearing on the parties' competing motions in which she stated that Father's non-compliance with his child support obligation had been an "ongoing issue. . . . [for] about two years."[8] At the hearing, Mother also testified that throughout 2010–prior to the filing of the instant contempt petition in December 2010–Father never paid child support in a timely manner, although the payments were "[e]ventually" made.[9] She further claimed that since the filing of her petition in December 2010, Father had accumulated an arrearage for the months of January through May 2011.[10]

At the hearing, Mother described her willingness to allow Father to extend his nine-month child support obligation over twelve months as well as her apparent willingness to allow Father to render payment on the fifteenth rather than the first day of each month. However, she stated that despite her accommodation efforts, Father had continued to delay or withhold payments and that when she asked for payment, he accused her of being "crazy."

In her December 7, 2010 Petition for Criminal Contempt, Mother alleged a child support arrearage of $2,059.00, apparently including his not-yet-paid December 2010 payment of $1,174.00. However, at the hearing, Mother agreed that the arrearage alleged was incorrect as it did not take into account two $600.00 payments made by Father. Thus, as of the date of the petition's execution on December 3, Father owed only December's $1,174.00 payment, which Mother acknowledged Father paid via check dated December 15, prior to being served with Mother's petition.

As stated above, in its Order, the trial court found Father guilty of criminal contempt due to his failure to pay his December 2010 child support obligation on or before December

---

[8]In her brief, Mother also states that "The couple was previously before the Court on the wife's contempt petition for $20,000.00 in unpaid alimony in 2006." The citation to the record provided, however, contains only statements by Mother's counsel alluding to an appearance before Judge Bivins in 2006.

[9]In her brief, Mother states that "Ms. Gaddes is emphatic in her testimony that, at no time ('ever') since the parties' divorce has Mr. Gaddes ever paid his monthly child support in specific compliance with the order of the Court, although the delayed payments are 'eventually' cleared." However, the citation provided to the record contains no testimony by Mother that Father has failed to comply with his child support obligation *since the parties' divorce*.

In her brief, Mother also states that following an arrearage accumulation Mother would "call to discuss the issue with Mr. Gaddes over a period of several weeks" and that Father would clear the arrearage and "pay regularly for a short time, before again slipping into a pattern of delayed payments or accumulated arrearages." However, this statement is simply unsupported by the citations provided.

[10]Father testified only with regard to child support, after the contempt charge was resolved.

1, 2010,[11] but it declined to order him incarcerated because it found that Father "had made effort [sic] to pay his child support, and he also paid the December, 2010 [sic] child support prior to having been served with the instant Petition for Criminal Contempt which was filed on December 7, 2010 and served upon [Father] later in the month." Finding scant evidence in the record to support Mother's assertions of decade-long non-compliance, and giving due deference to the trial court, we find no basis for concluding that the trial court abused its discretion in declining to impose incarceration as a sanction for Father's criminal contempt.

## B. *Uncovered Expenses*

Mother next argues that the trial court erred in failing to assess a $2,889.70 judgment against Father for one-half of the children's optical and dental expenses, because it found no order requiring Father to pay such. She claims that Father is obligated to pay for one-half of these expenses pursuant to the Final Decree of Divorce, which provides in relevant part:

> [Father] shall continue to maintain health insurance for the benefit of the parties' two minor children, and the parties shall each pay one-half of any expenses not covered by insurance.

Tennessee courts "have long recognized that orders and judgments should be construed like other written instruments, and that the interpretation of written instruments involves questions of law that are reviewed de novo without a presumption of correctness." *Konvalinka v. Chattanooga-Hamilton County Hosp. Authority*, 249 S.W.3d 346, 356 n.19 (Tenn. 2008) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 533 (Tenn. 2004)) (internal citations omitted).

On appeal, Mother argues that the "final decree's reference to 'medical expenses'" should be "reasonabl[y] interpret[ed]" to include the children's optical and dental expenses. She further contends that Father should be judicially estopped from claiming that such expenses are not "medical expenses" because Father previously asserted a contempt claim against her due to her alleged failure to pay a portion of the children's non-covered medical and dental expenses. Father, however, contends that "health insurance" covers only "medical" expenses–not optical and dental expenses–and therefore, that he is under no obligation to pay such.

---

[11]In her brief, Mother states that the court found Father "to be in willful contempt based upon the history of delayed or missed payments, and specifically for not paying on the first of each month." **(Br. 7)**. However, the trial court's Order indicates that its criminal contempt finding is based *solely* upon Father's failure to timely remit the December 2010 payment.

We find Mother's repeated references to "medical expenses" puzzling as the final decree does not use this term. Instead, it requires Father to maintain "health insurance" and it obligates the parties to split "any expenses not covered by insurance." However, we find Father's position on appeal untenable for several reasons. First, Father's assertion that "health insurance" does not cover optical and dental expenses supports the conclusion that such expenses are to be split by the parties, as, under Father's theory, they constitute "expenses not covered by insurance."

Moreover, we find that, due to his prior inconsistent position, Father is judicially estopped from claiming that the parties did not intend to split dental expenses. In 2005, Father filed a "Petition to Modify Alimony and Child Support and for Contempt" against Mother alleging that Mother had failed to comply with the Final Decree of Divorce, which he claimed, "required that the parties equally divide all non-covered medical and *dental* expenses on behalf of the minor children." **(Supp.)**. *See In re Estate of Boote*, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005) (citing *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999)) ("Judicial estoppel is an equitable doctrine designed to prevent parties from 'gaining an unfair advantage' in judicial proceedings by making inconsistent statements on the same issue in different lawsuits."). Although Father, in 2005, did not directly concede the division of *optical* expenses–as such were not at issue–we find no basis for treating these expenses differently from dental expenses.

Finally, although not dispositive, the parties' conduct further indicates their intent to share optical and dental expenses, as according to Mother and conceded by Father's counsel at the hearing in this matter, the parties split these expenses "for some time." *See Barton v. Gilleland*, No. E2004-01369-COA-R3-CV, 2005 WL 729174, at *11 (Tenn. Ct. App. Mar. 30, 2005) (citing *Hamblen Co. v. City of Morristown,* 656 S.W.2d 331, 335 (Tenn. 1983)) ("In interpreting a contract, it is appropriate, as a rule of practical construction, to consider the interpretation of a contract as evidenced by the parties' conduct and declarations."). In sum, we interpret the Final Decree of Divorce to require each party to pay for one-half of the children's optical and dental expenses not covered by insurance. Accordingly, we reverse the trial court's denial of Mother's reimbursement request, and we award Mother a judgment of $2,889.70.

## IV. CONCLUSION

For the aforementioned reasons, we affirm in part and we reverse in part. Costs of this appeal are taxed equally to Appellee, Paul W. Gaddes, Jr. and Appellant, Dianna A. Gaddes, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.