IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 10, 2015 Session

**ANDREW R. LUNN, DDS v. CAROLE MICHELLE LUNN**

**Appeal from the Chancery Court for Hamilton County**
**No. 11-0240     Jeffrey M. Atherton, Chancellor**

———————————

**No. E2014-00865-COA-R3-CV-FILED-JUNE 29, 2015**

———————————

The appeal in this divorce litigation presents issues regarding proper valuation of the parties' business, proper division of marital assets, alimony, child support, attorney's fees, and court costs. The parties were married for seventeen years, with three children being born of the marriage. The husband is a dentist, who started his own practice during the parties' marriage. Much of the testimony at trial focused upon the proper value to be assigned to this marital asset. The trial court adopted the value assigned by the wife's expert of $430,376. The trial court then ordered that all of the marital assets be divided equally between the parties. Further, the trial court awarded Wife rehabilitative alimony, transitional alimony, and alimony *in solido*. The husband has appealed the trial court's final judgment. We reverse the trial court's valuation of the dental practice, and we remand this matter to the trial court for a proper determination of the value of such asset. The trial court will also be required to redistribute the parties' marital assets as necessary, in accordance with its redetermined valuation of this asset, in order to effectuate the trial court's decision to make an equal division of marital property between the parties. We modify the trial court's award of transitional alimony to an award of alimony *in futuro*. We also remand, for the trial court's determination, the issue of a reasonable award of attorney's fees to Wife incurred in defending this appeal. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., joined. D. MICHAEL SWINEY, J., filed a separate concurring and dissenting opinion.

John P. Konvalinka and Katherine H. Lentz, Chattanooga, Tennessee, for the appellant, Andrew R. Lunn, DDS.

Harold L. North, Jr., and Nathaniel S. Goggans, Chattanooga, Tennessee, for the appellee, Carole Michelle Lunn.

## OPINION

### I.  Factual and Procedural Background

Andrew R. Lunn, DDS ("Husband"), filed this divorce action against Carole Michelle Lunn ("Wife"), on April 4, 2011.  The parties married on June 17, 1995, and separated on February 13, 2011.  They are the parents of three children, who were ages fifteen, thirteen, and eleven at the time of trial.  Husband is a dentist who operates a practice in Chattanooga as a sole proprietor.  Wife was a registered nurse but has worked primarily as a homemaker since the birth of the parties' first child in 1996.  Wife has, however, been employed on a part-time basis as office manager for Husband's dental practice.

Husband and Wife married immediately following Husband's graduation from dental school.  The parties' first child, a daughter, was born approximately eighteen months later.  The parties' sons were born in 1999 and 2001, respectively.  Before the birth of their daughter, Wife had been employed as a staff development instructor for the University of Mississippi Medical Center.  The parents agreed that Wife would be a homemaker following the births of the parties' children.  Wife did not maintain her nursing certification thereafter.  Wife was primarily tasked with the caregiving responsibilities for the children and management of the household while Husband was the primary wage earner.

In 2009, Husband became involved in an extra-marital relationship with his dental assistant.  Wife discovered this relationship in October 2010.  Following months of marital counseling, the parties separated in February 2011, with Husband renting an apartment and Wife and the children remaining in the marital residence.  As Husband maintained payment of the marital responsibilities pending the parties' divorce, he provided Wife a weekly allowance of $600 for food and gas expenses.

During the pendency of this action, Husband sought permission from the trial court to obtain a loan of $60,000, which he claimed would enable him to improve the parties' financial situation and resolve other liabilities.  Husband asserted that the recent "economic downturn" had negatively impacted his business.  The trial court granted Husband's request.  The trial court later found Husband to be in contempt for withdrawing funds from the parties' line of credit without the approval of Wife or the court.

2

A trial of this matter was conducted over several non-consecutive days, spanning June 26-29, 2012, and July 3, 2012. Numerous witnesses testified in addition to the parties, including the children, other family members and friends, and valuation experts for both sides. After the parties rested, the trial court scheduled a hearing for July 6, 2012, to consider closing arguments. On July 5, 2012, Wife filed a motion seeking to reopen the proof for the limited purpose of clarifying her testimony regarding her parents' payment of her expert witness and attorney's fees. During the scheduled hearing on July 6, 2012, the trial court granted the motion, stating that limited supplementation could be presented by both parties. The trial court also announced that due to concerns regarding the children's best interest and implementation of an appropriate permanent parenting plan, the court was, *sua sponte,* appointing counsel Robin Miller as the children's guardian *ad litem.* The court directed Ms. Miller to prepare a report addressing the respective issues.

The trial court conducted a subsequent hearing on July 27, 2012, wherein Wife was allowed ten minutes to present additional proof, and Husband was afforded twenty minutes. Following its receipt of the report from the guardian *ad litem*, the trial court issued a memorandum opinion on November 26, 2012. Concerning grounds, the trial court found that Husband's extra-marital relationship resulted in the destruction of the marriage and accordingly awarded a divorce to Wife.

Regarding the parties' real property, the trial court determined that the marital residence, the parties' lake lot, and the commercial building housing Husband's dental practice were all marital property. As the trial court noted, the marital residence had been sold at a loss and the lake lot was being marketed for sale. The trial court ordered that the deficiency from the sale of the marital residence be paid from the proceeds of the sale of the lake lot. Any proceeds remaining were ordered to be equally divided between the parties. By agreement, the parties valued the commercial property, upon which Husband's dental practice was located, at $620,000. The trial court determined that the undisputed amount of debt concerning this commercial property was $435,757, resulting in an equity value of $184,242.

The trial court noted in its memorandum opinion that the parties had previously divided their personalty. The parties conceded that all of their bank accounts were marital property. In connection therewith, the trial court found that although there existed some variations in the values listed for the bank accounts, Husband's values were more accurate because Husband's amended asset and liability statement had been filed most recently. The court also adopted values for the parties' automobiles.

The trial court next discussed at length the proper valuation of Husband's dental practice. On this issue, the court noted that the practice was undisputedly marital

3

property and that Wife had contributed to the value of same both as an office manager and a homemaker. The court specified that Tennessee law precluded the distribution upon divorce of personal goodwill as a component of the business's value. Therefore, the court determined that it would adopt the valuation of Wife's expert regarding the business minus any amount attributable to personal goodwill. The court further found that Husband's expert "grossly undervalued" the practice. The court concluded that the resultant value determined by Wife's expert, once personal goodwill was deducted, comported closely with a value Husband had placed on the practice on a 2005 financial statement. Having valued all of the parties' real and personal property, the court fashioned a nearly equal division.

Regarding spousal support, the trial court determined that the applicable statutory factors weighed in favor of an award of alimony to Wife. Having found that Wife needed time to re-establish her career, the court awarded her rehabilitative alimony for three years. Having also determined that Wife would not be able to earn an income comparable to that of Husband, the court awarded her transitional alimony in progressively decreasing amounts for sixteen years, the approximate duration of the parties' marriage. The court further awarded Wife alimony *in solido* to pay her attorney's fees.

Concerning co-parenting responsibilities, the trial court determined that Wife was the appropriate primary residential parent for the children. The court accordingly entered a permanent parenting plan that allowed the children time to transition to a greater amount of co-parenting time with Husband following family counseling. Child support was calculated based on Husband's income level of $411,457 per year, which the court gleaned from the parties' 2011 federal income tax return.

Both parties respectively filed motions to alter or amend the judgment. The trial court entered a subsequent order, allowing Husband to satisfy a portion of his obligations owed to Wife by transferring funds from his retirement account via a Qualified Domestic Relations Order ("QDRO"). Husband was directed to reimburse Wife for any tax liability she incurred as a result of such transfer. The court also ordered Husband to pay $5,000 of Wife's expert witness fees. The court denied Wife's request to base Husband's child support obligation on the actual co-parenting time he was currently spending with the children.

The trial court referred issues regarding the proper amount of an award of attorney's fees to Wife to the clerk and master, who conducted a hearing and issued a report finding that such fees should be set at $180,026. The court approved and adopted the master's report, with the exception of finding an additional $5,976 in fees and expenses inadvertently omitted from the report. The court thus increased the total

attorney's fees awarded in favor of Wife to $186,003.  The court subsequently entered a supplemental award of $21,295.

Husband timely appealed.  Thereafter, Wife filed a motion seeking reimbursement for the additional taxes she incurred resulting from the transfer of funds Husband made to her from his retirement account.  Husband objected to this motion, arguing that jurisdiction resided with this Court.  This Court allowed a limited remand so that the trial court could resolve the issue.  Upon remand, the trial court found that Wife's tax liability had increased by $16,022 due to the transfer of funds by QDRO.  The court thus ordered Husband to pay this amount, finding that the additional tax liability was due to Husband's decision to use retirement funds to pay his obligations to Wife.

## II.  Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred in its valuation of Husband's dental practice.

2.  Whether the trial court erred in the type, duration, and amount of alimony awarded to Wife.

3.  Whether the trial court erred by reopening the proof to allow additional testimony by the parties.

4.  Whether the trial court erred by assessing the guardian *ad litem's* fees to Husband.

5.  Whether the trial court erred in allocating Wife's 2013 additional tax liability to Husband.

Wife presents the following additional issues for review:

6.  Whether the trial court erred in declining to award Wife the entire amount of her expert witness fees and expenses.

7.  Whether the trial court erred in failing to determine Husband's child support obligation based on his actual co-parenting time.

8.  Whether Wife should be awarded her attorney's fees with regard to this appeal.

## III. Standard of Review

The value of marital property is a fact question, and a trial court's decision with regard to the value of a marital asset should be given great weight on appeal. *See Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). A trial court's decision with regard to the valuation of a marital asset will be presumed to be correct unless the evidence preponderates otherwise. *Id.* The trial court should determine the value of a marital asset by considering all relevant evidence regarding value, and the parties are bound by the evidence they present. *Id.* The trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted. *Id.*

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Court has further explained:

> a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id.* at 105-06 (other internal citations omitted).

Our Supreme Court has described the proper standard of review for child support determinations as follows:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

> * * *

> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

IV.  Valuation of Dental Practice

Husband asserts that the trial court erred in its valuation of the dental practice. Both parties presented expert testimony at trial regarding this issue.  Husband's expert, Brent A. McDade, valued the dental practice at $52,000.  Mr. McDade stated that, based on his understanding of Tennessee law, the valuation should only be established on the value of the net tangible assets, giving no consideration for the value of personal goodwill.  Wife's expert, Robert Vance, valued the dental practice at $430,376, excluding any consideration of personal goodwill, which he specifically valued at $209,624.  Mr. Vance's evaluation did, however, include "enterprise" goodwill of $277,090.  The trial court adopted the $430,376 value presented by Mr. Vance, based in part on the fact that Husband had similarly valued the practice assets at $450,000 on a 2005 financial statement he had prepared and presented when applying for a loan.

Husband contends that the trial court erred in adopting Wife's expert's value because it included "enterprise" goodwill.  Regarding the business valuation, the trial court stated in pertinent part:

> As discussed previously, according to *McKee* and other Tennessee case law, the Court cannot include the added value for personal goodwill in its valuation of the dental practice for the purpose of dividing marital property.  Although Defendant, by analogy and through the testimony of Mr. Vance, asserted that Plaintiff's work in Memphis illustrates that any dentist could step into Plaintiff's practice, thus the personal goodwill relating to Plaintiff's Chattanooga practice should be considered, the Court does not find the argument or testimony persuasive.  To the contrary, the Court notes the continuing concern noted in *Smith v. Smith*: "There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets of a judicially determined value that could not be realized by a sale or another method of liquidating value." 709 S.W.2d 588, 592 (Tenn. Ct. App. 1985) (quoting *Holbrook v. Holbrook*, 309 N.W.2d 343, 354 (Wis. Ct. App. 1981)).  Thus, discounting the $209,624 of personal goodwill, Mr. Vance values the company at $430,376, which includes enterprise goodwill and the total assets and equipment values of the company minus the total liabilities.  Tr. Ex. 5, p. 23.  While Mr. Vance's evaluation seems somewhat optimistic, the Plaintiff's expert evaluation of $52,000 conversely seems to grossly undervalue the company:  a valuation of the business that does not account for the

enterprise goodwill that results from building a successful operation for eight years, especially when the business has been posting its best profits in the most recent years, seems unreasonable. *See Eberting v. Eberting*, No. E2010-02471-COA-R3-CV, 2012 WL 605512, *19 (Tenn. Ct. App. Feb. 27, 2012) (including the specialized equipment, original purchase price of the business, and increased revenues over the years in calculating the reasonable valuation of husband's orthodontic practice).

Mr. Vance's valuation is not without its problems either. The Court notes the discrepancies in valuation of the dental practice's hard assets between the two reports, particularly the equipment, which Mr. Vance has given greater life-expectancy resulting in their higher value in his report. *Compare* Tr. Ex. 2, Table 1 (valuing the equipment at $111,039) *with* Tr. Ex. 5, p.23 (valuing equipment at $226,000). However, the Court finds that Mr. Vance's $430,376 estimate of the value of the dental practice comports more closely with the Plaintiff's own admission that the dental practice had a value of $450,000 on an April 5, 2005 financial statement submitted for the purposes of obtaining a loan. *See* Tr. Ex. 1. Accordingly, the Court adopts Mr. Vance's accounting of the total equity value of the dental practice's hard assets and enterprise goodwill, less the value of "personal goodwill," as $430,376.00.

As the trial court properly recognized, this Court has repeatedly held that professional goodwill in a sole proprietorship is an intangible asset that is not divisible as marital property upon divorce because it is personal to the proprietor. *See, e.g., Hartline v. Hartline,* No. E2012-02593-COA-R3-CV, 2014 WL 103801 at *13 (Tenn. Ct. App. Jan. 13, 2014); *Eberting v. Eberting*, No. E2010-02471-COA-R3-CV, 2012 WL 605512 at *19 (Tenn. Ct. App. Feb. 27, 2012). Although the courts of our state have recognized the existence of "enterprise" or "business" goodwill as a distinct concept from professional or personal goodwill, *see, e.g., McKee v. McKee*, No. M2009-01502-COA-R3-CV, 2010 WL 3245246 at *3 (Tenn. Ct. App. Aug. 17, 2010) and *York v. York*, No. 01-A-01-9104-CV-00131, 1992 WL 181710 at *3 (Tenn. Ct. App. July 31, 1992), this Court has been reluctant to allow enterprise goodwill to be divided as a marital asset upon divorce when the business involved is a sole proprietorship, as here. *See Hartline,* 2014 WL 103801 at *13. As we explained in *Hartline*:

[Wife's expert's] testimony illustrates the fine line previously noted by this Court between the personal goodwill of a practitioner and the business goodwill of a practitioner's business, complete with staff, equipment, and a location that could be assumed by another practitioner. *See Smith*, 709 S.W.2d at 592-93. In holding that goodwill of a sole

9

practitioner should not be considered for purposes of property distribution in a divorce action, this Court has noted that the "'concept of professional good will evanesces when one attempts to distinguish it from future earning capacity.'" (*Id.* at 591) (quoting *Holbrook v. Holbrook*, 309 N.W.2d 343 (Wis. Ct. App. 1981)).

> [Wife's expert] was clearly distinguishing between Husband's personal goodwill in the community and the goodwill his practice would continue to enjoy with a different practitioner in terms of equipment, staff, location, and established patients. This Court has previously determined that such a distinction may be considered in including business goodwill for valuation where the practitioner has one or more partners or pre-established contracts that could be assumed by another practitioner. *See, e.g. York v. York*, No. 01-A-01-9104-CV00131, 1992 WL 181710 (Tenn. Ct. App. July 31, 1992) (concluding that as opposed to cases such as *Smith*, in which "the professional practice's value as a going concern and its business reputation were inseparable from the professional reputation of the practitioners," "'net asset value' principles do not apply to incorporated professional practices that do not depend solely on the professional reputation of the practitioner."). However, in a case such as the one at bar, wherein Husband is the sole practitioner of an unincorporated dental practice, whether his business could continue without him is speculative, leading to the conclusion that the goodwill of Husband's practice should not be considered in valuing said practice. *See Smith*, 709 S.W.2d at 592. We therefore must reverse the trial court's valuation of Husband's dental practice and remand for valuation without consideration of goodwill, <u>regardless of whether that goodwill is associated personally with Husband or with his practice</u>.

*Hartline*, 2014 WL 103801 at *13 (emphasis added). Based on this precedent, we determine that the adoption of a valuation that expressly included enterprise goodwill was erroneous because the business involved was a sole proprietorship.

We recognize the trial court's stated reliance on *Eberting*, wherein this Court explained that the value of a sole proprietorship may be based on other evidence apart from the expert valuations, such as the business's previous purchase price, the business's location in a state-of-the-art facility, increasing revenues for the business, and the value assigned to the business by its owner on a financial statement. *See* 2012 WL 605512 at *19. The trial court herein thus relied upon Husband's "own admission that the dental practice had a value of $450,000 on an April 5, 2005 financial statement submitted for the purposes of obtaining a loan." A review of this financial statement, however, reveals

that although Husband did list $450,000 in assets for the practice, he also listed a debt against the dental equipment of $240,000, which would result in a net value of $210,000. Therefore, Husband's total value listed on the 2005 financial statement does not, in fact, comport with Mr. Vance's total value, including enterprise goodwill, of $430,376.

Finding no other evidence in the record that supports the $430,376 value found by the trial court, we must reverse the trial court's determination regarding this issue and remand for the trial court to determine the value of the dental practice without consideration of professional or enterprise goodwill. *See Hartline*, 2014 WL 103801 at *13. The trial court's modification of the value of this asset will clearly affect the overall equitable division of the marital estate. Therefore, we remand that issue to the trial court for determination as well.

## V.  Spousal Support

Husband asserts that the trial court erred in the type, duration, and amount of spousal support awarded to Wife. The trial court awarded Wife rehabilitative alimony in the amount of $3,600 per month for three years, for the stated purpose of enabling Wife to fulfill her continuing education goals and regain her nursing license. The court also awarded Wife transitional alimony of $6,451 per month until March 2013, $2,288 per month until May 2021, and $500 per month until May 2029. Wife further received an award of alimony *in solido* in the amount of $207,295 to defray her attorney's fees. We will address each of the issues concerning spousal support in turn.

### A.  Type and Duration of Alimony

Husband contends that the award of transitional alimony was erroneous because transitional alimony, which has been defined as "short-term support," should not have been awarded for a period in excess of sixteen years. Our statutory scheme regarding awards of alimony, provided in Tennessee Code Annotated § 36-5-121 (2014), states in pertinent part:

> (c)(1) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that

11

provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

(2) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).

(2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. . . .

(3) Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (i), the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient, except as otherwise provided in subdivision (f)(2)(B).

(4) An award of alimony in futuro may be made, either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

(5) Alimony in solido may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate.

(e)(1) Rehabilitative alimony is a separate class of spousal support, as distinguished from alimony in solido, alimony in futuro, and transitional alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

* * *

(f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible . . . .

* * *

(g)(1) Transitional alimony means a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

* * *

(h)(1) Alimony in solido, also known as lump sum alimony, is a form of long term support, the total amount of which is calculable on the date the decree is entered, but which is not designated as transitional alimony. Alimony in solido may be paid in installments; provided, that the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded. The purpose of this form of alimony is to provide financial support to a spouse. In addition, alimony in solido may include attorney fees, where appropriate.

* * *

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and

homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Further, regarding transitional alimony, our Supreme Court has explained:

The fourth category of support, transitional alimony, is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce. Simply put, this type of alimony "aid[s] the person in the transition to the status of a single person." *Mills v. Mills*, No. M2009-02474-COA-R3-CV, 2010 WL 3059170, at *5 (Tenn. Ct. App. Aug. 4, 2010); *see also Montgomery v. Silberman*, No. M2009-00853-COA-R3-CV, 2009 WL 4113669, at *2 (Tenn. Ct. App. Nov. 24, 2009) (affirming trial court's award of transitional alimony to wife "to bridge the gap, so to speak, between her married life and single life"); *Engesser v. Engesser*, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010) (en banc) (describing transitional alimony as "[b]ridge-the-gap alimony" designed to "smooth the transition of a spouse from married to single life"). In contrast to rehabilitative alimony, which is designed to increase an economically disadvantaged spouse's capacity for self-sufficiency, transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income. As such, transitional alimony is a form of <u>short-term support</u>.

*Gonsewski*, 350 S.W.3d at 109 (other internal citations omitted) (emphasis added). Husband argues that sixteen-plus years of transitional alimony exceed the intended purpose of "short-term support."

Following our thorough review of this issue, we agree with Husband. We recognize that the statute concerning alimony, detailed above, reflects a legislative preference favoring an award of rehabilitative or transitional alimony rather than alimony

*in futuro* or *in solido*. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Gonsewski*, 350 S.W.3d at 109. In previous cases where the award of transitional alimony was questioned, however, this Court has affirmed an award of transitional alimony for a period of eight years at most. *See, e.g., Miller v. McFarland*, No. M2013-00381-COA-R3-CV, 2014 WL 2194382 at *8 (Tenn. Ct. App. May 23, 2014) (holding that a period of eight years is not an unreasonable duration for an award of transitional alimony); *Kelly v. Kelly*, No. E2012-02219-COA-R3-CV, 2013 WL 4007832 at *12 (Tenn. Ct. App. Aug. 6, 2013), *rev'd in part* 445 S.W.3d 685 (Tenn. 2014) (modifying award to transitional alimony of eight years' duration); *Hatfield v. Hatfield*, No. M2012-00358-COA-R3-CV, 2013 WL 493305 at *6 (Tenn. Ct. App. Feb. 7, 2013) (affirming award of alimony of $1,200.00 per month for five years, but modifying the designation of such alimony from alimony *in futuro* to transitional alimony); *Ghorashi–Bajestani v. Bajestani*, No. E2009-01585-COA-R3-CV, 2010 WL 3323743 at *15 (Tenn. Ct. App. Aug. 24, 2010) (modifying nine-year transitional alimony award to period of six years, given that the parties were married only eight years); *Pearson v. Pearson*, No. E2007-02154-COA-R3-CV, 2008 WL 4735305 at *13 (Tenn. Ct. App. Oct. 27, 2008) (affirming award of alimony of $1,500.00 per month for six years, but modifying the designation of such alimony from rehabilitative alimony to transitional alimony).

We also note that the above statutory provisions expressly provide that "[t]ransitional alimony is awarded when the court finds that <u>rehabilitation is not necessary</u>, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection." Tenn. Code Ann. § 36-5-121(d)(4) (emphasis added). Alimony *in futuro*, by contrast, may be awarded in addition to an award of rehabilitative alimony, "where a spouse may be only partially rehabilitated." *Id.*

In this case, the trial court found that Wife could be rehabilitated to some degree if she completed her continuing education hours and regained her nursing license. The trial court found that Wife would likely be able to obtain employment as a registered nurse and thus improve her earning capacity, with reasonable effort, in approximately three years. Neither party disputes that some level of rehabilitation is feasible for Wife, and the evidence supports the trial court's finding in this regard. The trial court also found, however, that it would be unlikely for Wife, after returning to work, to be able to earn an income "anywhere close to" Husband's income. Because Wife's earning capacity would not be comparable to Husband's, the trial court awarded transitional alimony for a period in excess of sixteen years.

We agree with the trial court that it would be improbable for Wife to be able to earn an income equivalent to or even approaching that of Husband once she has

16

rehabilitated herself and returned to the workforce. The evidence demonstrated that Husband earned in excess of $400,000 in the year prior to trial, similarly earning approximately $300,000 to $400,000 annually in recent years.[1] Assuming that Wife is able to regain her nursing license and obtain employment, the evidence established that the annual mean wage for a registered nurse in the Chattanooga area in 2011 was $57,490. Therefore, a considerable disparity of income between the parties would clearly exist notwithstanding Wife's contemplated partial rehabilitation.

Following our thorough review of the record, we conclude that the trial court did not err in its consideration of the statutory factors listed above and its determination that Wife was entitled to an award of alimony beyond the period of her rehabilitation. As the trial court found, factors 1, 2, 3, 6, 9, 10, and 11 weigh in favor of an award of alimony to Wife. *See* Tenn. Code Ann. § 36-5-121(i). Even with rehabilitation, Wife's earning capacity will only measure as a fraction of the earning capacity of Husband. Husband will in all probability maintain greater financial resources in the future than Wife. The parties enjoyed a marriage of relatively long duration. Wife is the primary residential parent of the children, spending a significant portion of her time engaged in activities related to the children. The parties enjoyed a luxurious standard of living during the marriage, with both contributing their efforts to the marital estate as wage earner and homemaker respectively. Finally, as determined by the trial court, Husband must bear the fault for the divorce.[2] Accordingly, while modifying its form and duration, we affirm the trial court's grant of alimony to Wife.

Wife's ability to achieve partial rehabilitation is not disputed, thus the award of rehabilitative alimony is proper. We conclude, however, that it is appropriate to modify the transitional alimony award to an award of alimony *in futuro*. As previously explained, transitional alimony should be awarded where rehabilitation is not necessary. Tenn. Code Ann. § 36-5-121(d)(4). If, as here, the disadvantaged spouse can be only partially rehabilitated, an award of alimony *in futuro* may be granted in addition to rehabilitative alimony. Tenn. Code Ann. § 36-5-121(d)(4). Having determined that the trial court correctly found that Wife would experience an ongoing need for alimony beyond the period of rehabilitation, we conclude alimony *in futuro* would be the more

---

[1] In 2010, Husband earned in excess of $500,000 by working for a dental practice in Memphis and supplementing his regular practice income. Husband testified that this was unlikely to recur in the future.

[2] We note that this is a proper factor to be considered based on Tennessee Code Annotated § 36-5-121(i)(11). Despite Husband's protestations, it is not the mere consideration of fault that renders an alimony award "punitive." *See, e.g., Tait v. Tait*, 207 S.W.3d 270, 278 (Tenn. Ct. App. 2006) (holding that where the trial court found that the wife needed no additional support in order to maintain a lifestyle commensurate with what she enjoyed during the marriage, any award of alimony based only upon the husband's fault would be purely punitive in nature and thus not allowed under Tennessee law).

17

appropriate form of this award. We therefore modify the trial court's judgment accordingly.[3]

## B. Amount of Alimony Award

Based on the foregoing, we must address whether the amount of the alimony award now modified as *in futuro* is appropriate, given the parties' circumstances and the long-term nature of the award. We will also address whether the amount of the rehabilitative alimony award is appropriate.

The courts of this state have often repeated that while consideration of all of the statutory factors is necessary when determining the proper amount of an alimony award, the most important considerations are the need of the disadvantaged spouse and the ability of the obligor spouse to pay. *See Gonsewski*, 350 S.W.3d at 110; *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984). In the case at bar, Wife filed an expense statement detailing monthly expenses of $28,509. Several of these expenses, however, were shown to be non-continuing due to the impending sale of the marital residence and lake lot. Further, Wife included expenses for the children that would presumably be somewhat satisfied by the receipt of child support. The trial court thus premised its award of "transitional" alimony of $2,288 per month for eight years on the estimate developed by Wife and Mr. Vance regarding the cost for her to purchase and maintain a more moderately priced home.[4] Wife currently has no source of income with which to pay any expenses.

The trial court determined Husband's income to be $411,000 per year, based on his 2011 federal income tax return. In support, the court found that the tax return was the best evidence of Husband's income as it reflected the growth in his dental practice but did not include the supplemental income he received in 2010 while working for the separate practice in Memphis. We agree inasmuch as Wife's expert established and Husband acknowledged that the revenue from his dental practice had increased. Further, Husband stated that the supplemental income from Memphis would likely not recur in the future. An annual income of $411,000 per year would equate to a monthly gross income of approximately $34,000.

---

[3] Modifying the type of alimony from transitional to *in futuro* will, of course, render the award modifiable such that it may be may be "increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." *See* Tenn. Code Ann. § 36-5-121 (f).

[4] We note that the trial court's award of $6,451 per month until March 2013 was specifically designed to cover the cost of Wife's remaining in the marital residence until a certain date, which has long since passed.

Similar to Wife, Husband reported expenses of $28,350 per month, including the monthly mortgage payments relative to the marital residence ($10,282) and the monthly costs ($1,880) associated with its maintenance. The evidence was that the parties were in the process of selling the marital residence at the time of trial; therefore, upon closing, this would no longer be an expense to be borne by either of the parties. We recognize that Husband will have some expense related to his housing, but such expense should not closely approach the $13,000 per month he was paying toward the marital residence. Husband also included almost $2,200 per month in expenses for food, clothing/laundry, and recreation for the children when he enjoyed co-parenting, at most, every other weekend, two weeks in the summer, and various holidays. As demonstrated at trial, Husband's expenses were clearly overstated.

While Husband earns approximately $34,000 per month, he is obligated to pay $3,423 monthly in child support. There was a dearth of evidence regarding what Husband's reasonable expenses would be post-divorce. Assuming, *arguendo*, the deduction of a reasonable amount of monthly expenses, Husband would maintain an excess of income with which to pay alimony to Wife. We therefore conclude that Wife has shown a clear need for alimony and that Husband has a demonstrated ability to pay.

As previously reviewed, the trial court awarded Wife rehabilitative alimony for three years at the rate of $3,600 per month. The court also awarded Wife "transitional" alimony of $2,288 per month for eight years and $500 per month for another eight years. The court primarily established the "transitional" alimony award amount on an approximation of the cost for Wife to obtain housing and utilities for herself and the children. Based on the expense statements submitted respectively by Wife and Husband, we do not find either award to be excessive. Wife currently has no income, and the rehabilitative alimony award will allow her time to regain her nursing license and obtain employment, which would give her the ability to contribute to her own support. As Wife will likely confront an extreme economic disadvantage compared to Husband following rehabilitation, she will need an additional amount of alimony in order to maintain a standard of living reasonably comparable to that which she enjoyed during the marriage, or which Husband will be able to enjoy following the divorce. We conclude that $2,288 per month is an appropriate amount based on the purpose of rendering the standard of living reasonably comparable between the two households. *See* Tenn. Code Ann. § 36-5-121(c)(2).

As our Supreme Court has explained:

Not even long-term support is a guarantee that the recipient spouse will be able to maintain the same standard of living enjoyed before the divorce because "two persons living separately incur more expenses than two

persons living together." *Gonsewski*, 350 S.W.3d at 108 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Although the parties' standard of living is a factor courts must consider when making alimony determinations, *see* Tenn. Code Ann. § 36-5-121(i)(9), the economic reality is that the parties' post-divorce assets and incomes often will not permit each spouse to maintain the same standard of living after the divorce that the couple enjoyed during the marriage. *Gonsewski*, 350 S.W.3d at 113. Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id*. at 109-10.

*Mayfield v. Mayfield*, 395 S.W.3d 108, 115-16 (Tenn. 2012). Applying these principles, we determine that Wife has a need for at least $2,288 per month in addition to the rehabilitative alimony award, in order to maintain a standard of living reasonably comparable to that which she enjoyed during the marriage or that Husband will be able to enjoy following the divorce. We also determine that Husband has the ability to pay such an award. As previously stated, alimony *in futuro* remains within the trial court's control and is modifiable upon a showing of a substantial and material change of circumstances. Therefore, if the parties' financial positions undergo substantial and material change in the future, either party may petition for a modification of the alimony award. We affirm the trial court's award of $3,600 per month in rehabilitative alimony for a period of three years. We modify, however, the trial court's award of transitional alimony by granting Wife an award of alimony *in futuro* of $2,288 per month until the death or remarriage of Wife. *See* Tenn. Code Ann. § 36-5-121(f)(1).[5]

### C.  Alimony *in Solido*

Husband also argues that the trial court erred in ordering him to pay $207,295 for wife's attorney's fees as alimony *in solido*. The trial court based its award on the fact that Wife was awarded a "relative lack of assets" in the marital property division. Husband asserts that Wife received $92,121 as her share of the equity in the commercial real property and $215,188 as her share of the dental practice, plus funds from other small bank accounts. Because we have reversed the valuation of the dental practice, Wife will likely now be receiving less value from the marital property division. Thus, if Wife were forced to pay her attorney's fees of $207,295, the assets she received from the marital estate could be depleted.

---

[5] Due to the demonstration of Wife's need and Husband's ability to pay in addition to the modifiable nature of an award of alimony *in futuro*, we conclude that there exists no reason for the award to automatically decrease to $500 per month after eight years.

As our Supreme Court observed in *Gonsewski*:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony *in solido*. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

350 S.W.3d at 113 (internal citations omitted). Further, this Court has stated:

> Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms*, 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)). "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Church v. Church*, 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez*, No. E2012-02056-COA-R3-CV, 2013 WL 5436752 at *8 (Tenn. Ct. App. Sept. 27, 2013).

As previously explained, the statutory factors listed in Tennessee Code Annotated § 36-5-121(i) militate in favor of an award of alimony *in solido* to Wife. Wife currently has no income and no ability to replace assets. She will likely experience a significantly lower earning capacity than Husband. The marriage was of fairly long duration with the parties enjoying a luxurious lifestyle. Wife is the primary residential parent and primary caregiver for the children. In addition, both parties contributed to the marital estate, and

21

as determined by the trial court, Husband was at fault for the termination of the marriage. Husband has the greater ability to pay such an award, which would otherwise require Wife to deplete any assets she was awarded from the marital estate. Therefore, based on these factors, we conclude that the trial court did not abuse its discretion in awarding Wife $207,295 in attorney's fees as alimony *in solido*.

Husband also asserts that the award of attorney's fees was unreasonable because (1) as the trial court did not award all of Mr. Vance's fees, any entries for attorneys' time spent corresponding with Mr. Vance should be disallowed, and (2) Wife presented billing entries from two attorneys and a paralegal, creating duplicate and unnecessary charges. We note, however, that the clerk and master held a full evidentiary hearing regarding the reasonableness of the attorney's fees incurred by Wife and specifically addressed all of Husband's concerns in this regard. Further, the trial court approved and adopted the clerk and master's report. We determine that the evidence preponderates in favor of the trial court's award of alimony *in solido* and affirm that award in all respects.

## VI. Supplemental Proof

Husband asserts that the trial court erred in allowing the proof to be reopened and supplemented once the parties had rested. At the close of the proof on July 3, 2012, the trial court scheduled a hearing for July 6, 2012, to consider closing arguments. On July 5, 2012, Wife filed a motion seeking to reopen the proof for the limited purpose of clarifying her testimony regarding her parents' payment of her expert witness and attorney's fees. Husband's counsel objected to such supplementation, noting that he would also desire to supplement the proof if Wife were given the opportunity to do so. In granting the motion, the trial court stated that limited supplementation of proof could be presented by both parties. The trial court accordingly conducted a subsequent hearing on July 27, 2012, wherein the court allowed Wife ten minutes and Husband twenty minutes, respectively, to present additional proof.

Husband contends that the reopening of proof resulted in prejudice to him because Wife was allowed the opportunity to "change" her testimony regarding the payment of her attorney's fees. At trial, Wife was questioned regarding her attorney's fees, which she stated had been paid by her parents. When Wife was asked whether she had signed any loan documents evincing an obligation to repay her parents, she replied that she had not. While the proof was reopened, Wife clarified that she was, however, expected to repay these sums to her parents after the divorce was final. As explained by her counsel, the object of reopening the proof was to allow Wife to clarify that those sums had to be repaid. Husband was then granted twice as much time as Wife within which to supplement his proof and clarify his prior testimony. This was in addition to being

22

allowed to cross-examine Wife regarding the matter of her attorney's fees. We find no prejudice to Husband in this situation. This issue is without merit.

## VII. Guardian *Ad Litem* Fees

Husband asserts that the trial court erred in assessing the fees of the guardian *ad litem* solely to him. Husband concedes that Tennessee Code Annotated § 36-4-132(b) (2014) states that the fees and costs of the guardian *ad litem* "shall be borne by the parties and may be assessed by the court as it deems equitable." Husband further concedes that the trial court is afforded a great deal of discretion in awarding costs. *See Placencia v. Placencia*, 3 S.W.3d 497, 503 (Tenn. Ct. App. 1999) ("Absent a clear abuse of discretion, appellate courts generally will not alter a trial court's ruling with respect to costs.").

As explained above, "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court . . . ." *Gonsewski*, 350 S.W.3d at 105-106. Husband contends in his brief that the trial court's decision to assess the fees of the guardian *ad litem* solely to Husband is the result of a "clearly erroneous assessment of the evidence," given "the Trial Court's recognition of Wife's campaign of parental alienation and subsequent concern for the best interest of the children . . . ." Husband's argument regarding this issue is unpersuasive.

Although the trial court did express concern about implementing a permanent parenting plan that sufficiently addressed the best interest of the children in light of their reluctance to participate in co-parenting time with Husband, the trial court made no finding that Wife had attempted to alienate Husband from the children. Rather, the court found that the children had thwarted Husband's attempts to visit with them. There is no basis in the record for this Court to find that the trial court abused its discretion in the assessment of the fees of the guardian *ad litem*. We determine this issue to be without merit.

## VIII. Wife's Federal Tax Liability

Husband asserts that the trial court erred in assessing Wife's additional federal tax liability of $16,022 to Husband. The court found that the liability resulted from Husband's decision to transfer funds from his 401(k) in order to satisfy part of his obligations from the division of the marital estate. Following the trial court's distribution of the marital estate, Husband owed Wife certain monetary obligations, including an indebtedness of $92,121 owed to Wife for her share of the equity in the parties'

23

commercial real property. Husband sought to transfer this amount to Wife from his 401(k) via a QDRO. The court approved such a transfer but ordered that Husband would be responsible for any tax liability Wife incurred as a result.

The trial court subsequently entered a QDRO effecting a withdrawal in the amount of $115,151 from Husband's 401(k). The 401(k) administrator withheld $23,030 from that amount for "federal income tax" and sent Wife a check for the net amount of $92,121. Such was the exact amount of Husband's obligation with regard to the commercial property. Wife later received a Form 1099-R from the 401(k) administrator for the full amount of the distribution, $115,151. Wife represented to the trial court that inclusion of this amount as income on her 2013 federal income tax return resulted in additional tax liability of $16,022 for her. Husband argued that the additional tax liability was due to income from pensions and annuities received by Wife.

The parties submitted written arguments regarding this issue to the trial court. Upon reviewing these documents, the trial court determined that Wife's increased tax liability was in fact a result of the transfer from Husband's 401(k). The court further found that Wife was assessed income from this transfer of $115,151 even though the plan administrator withheld $23,020 for federal income tax, resulting in Wife's receipt of the net amount of $92,121. Considering the evidence, the court noted that the tax withheld by the plan administrator represented the tax incurred for Husband's "cashing out" part of his retirement account. The additional tax incurred by Wife, however, was a result of this additional income. As Wife points out, had she simply received a cash payment from Husband representing her share of the division of marital assets, a non-taxable event would have occurred. Rather, Husband's choice in paying this obligation utilizing his 401(k) resulted in the 1099-R being sent to Wife, thereby requiring her to report these funds as income received. Ergo, the evidence does not preponderate against the trial court's finding that Wife's increased tax liability was caused by Husband's use of retirement funds to effectuate a division of marital property. We find no merit in Husband's argument.

IX. Expert Witness Fees

Wife asserts that the trial court erred in failing to require Husband to pay the full amount of fees and costs for Wife's business valuation expert, Mr. Vance. Expert witness fees are allowable as discretionary costs by the trial court. *See* Tenn. R. Civ. P. 54.04; *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002). Again, the trial court's decision to grant or deny such costs is reviewable under an abuse of discretion standard. *Id*.

Mr. Vance testified at trial that his fees totaled approximately $45,000. The trial court only assessed $5,000 of these fees to Husband, stating that it was "not convinced" that Wife would have to repay her parents for the amounts they paid to Mr. Vance. Further, the trial court noted that many of Mr. Vance's opinions were not "particularly persuasive." Wife asserts that these fees should have been paid by Husband because his conduct caused the divorce and because he had greater ability to pay the fees without depleting his assets.

We are not persuaded that the trial court abused its discretion in denying Wife the full amount of Mr. Vance's fees. We find nothing in this record to demonstrate that the trial court "applie[d] an incorrect legal standard, reache[d] a decision that is illogical, base[d] its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that cause[d] an injustice to the complaining party." *See Massachusetts Mut. Life Ins. Co.*, 104 S.W.3d at 35. We emphasize that the trial court's decision must be upheld so long as "reasonable minds can disagree about its correctness." *Id.* We therefore affirm the trial court's decision regarding this issue.

## X. Child Support

Wife also argues that the trial court abused its discretion when setting Husband's child support obligation because the court failed to set support based on the actual number of days Husband spent with the children. The trial court based the child support award on the recitation in the permanent parenting plan that Husband would have the children for 160 days per year. The trial court noted that this plan would be implemented following a short "transition period."

Wife asserts that Husband has rarely parented the children overnight following entry of the trial court's order. This Court has no evidence in the record, however, demonstrating this assertion to be fact. The trial court ordered that Husband would have 160 days of co-parenting time with the children, and this order has not been modified. Therefore, this Court has no other proof regarding the actual co-parenting time currently being exercised. In the absence of such evidence, we conclude that this issue is also without merit.

## XI. Attorney's Fees on Appeal

Finally, Wife contends that she should be granted an additional award of attorney's fees incurred in defending this appeal. As this Court has previously elucidated:

Our supreme court has defined the factors that should be applied when considering a request for attorney fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. *See Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962).

*Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 at *10 (Tenn. Ct. App. Sept. 3, 2003).

Considering these factors, we conclude that Wife is entitled to an additional award of attorney's fees on appeal. Although Husband achieved some limited success regarding the issue of business valuation on appeal, Wife prevailed on the trial court's alimony determinations as well as the other issues raised by Husband. Further, we recognize that Husband has a greater ability to pay the requested fees. Therefore, we remand this issue to the trial court for the limited purpose of determining a reasonable amount of attorney's fees to be awarded to Wife for successfully defending a significant portion of Husband's appeal.

## XII. Conclusion

For the foregoing reasons, we reverse the trial court's valuation of the dental practice, and we remand this matter to the trial court for a proper determination of the value of that asset. The trial court will also be required to reexamine division of the parties' marital assets as necessary, in accordance with its valuation of this asset, in order to effectuate an equal distribution between the parties. We modify the trial court's award of transitional alimony to an award of alimony *in futuro* in the amount of $2,288 per month. We also remand, for the trial court's determination, the issue of a reasonable award of attorney's fees to Wife incurred in defending this appeal. We affirm the trial court's judgment in all other respects. Costs of this appeal are assessed to the appellant, Andrew R. Lunn.

_____
THOMAS R. FRIERSON, II, JUDGE

26